**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **NDOKEY ENOW, # 435-845, #199085** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   Civil Action No. PWG-15-3177 |
| | * |
| **ROBERT L. GREEN,** | * |
| **SHELFORD GILLIAM,** | * |
| **ANTHONY MUDALUE,** | * |
| **ROBERT ANDREWS,** | * |
| **JOSHUA PHEABUS,** | * |
| **DR. DONALD RHOADES, MD,** | * |
| **DULPHINE NICOL,** | * |
| | * |
| **Defendants.** | * |
| | *** |

## MEMORANDUM OPINION

Plaintiff Ndokey Enow, who refers to himself in his court filings as "Dr." and "D.Sc./Ph.D.," and evidently has a doctorate from Capitol College, has filed serial (unsuccessful) actions in this Court relating to his conditions of confinement awaiting trial at Montgomery County Correctional Facility ("MCCF"), and (following his conviction for solicitation to commit first degree murder) while confined by the State of Maryland. His multiple filings have earned him three strikes under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), yet this has done little to deter his repeated filings, which impose a significant burden on both the Clerk's office and the Court. In this action, Enow seeks to assert 42 U.S.C. § 1983 and related state claims against a variety of correctional and medical defendants alleging deliberate indifference to his personal safety, and serious medical conditions. Because he has failed to exhaust his administrative remedies, his federal claims are dismissed with prejudice, and the Court declines to exercise jurisdiction over the state claims. His Motion for Summary Judgment will be denied as moot.

**Background**[1]

Enow, proceeding *pro se*, filed this lawsuit against the "Warden" on October 15, 2015, and subsequently amended the Complaint to add Defendants Robert Green, Shelford Gilliam, Anthony Mudalue, Robert Andrews, Joshua Pheabus, and Dulphine Nicol (collectively, the "Montgomery County Defendants"), as well as Dr. Donald Rhoades, M.D. ECF Nos. 1, 7, 11, 14.[2] The Complaint presents claims of deliberate indifference for failure to protect and failure to provide adequate medical care during the time he was a pretrial detainee at MCCF, premised on the Fourteenth Amendment of the United States Constitution and Maryland law. Am. Compl.; Second Am. Compl. Enow filed exhibits and affidavits with his Complaint, and the Amended Complaints are verified. Compl. 8, Pl.'s Aff. 1, ECF No. 11-4; Pl.'s Aff. 1, ECF No. 11-3; Am. Compl. 14 ¶ 28 (affirming that the facts in the Amended Complaint are true to the best of his knowledge); Second Am. Compl. 14 ¶ 29 (affirming that the facts in the Second Amended Complaint are true to the best of his knowledge).

Enow was confined at MCCF from June 7, 2014 through March 4, 2015. Am. Compl. 5. He claims that, from approximately November 2014 through February 2015, he was assaulted by

---

[1] When considering Defendants' Motion to Dismiss, I accept the facts alleged in Enow's complaints as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] Enow filed a Complaint, ECF No. 1, a Supplement, ECF No. 7, and two Amended Complaints, Am. Compl., ECF No. 11; Second Am. Compl., ECF No. 14. Mindful that Enow is self-represented, I will accord his filings liberal construction and consider his allegations in all iterations of his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)) (noting a pro se plaintiff is held to a "less stringent" standard than a lawyer, and the court must liberally construe a pro se plaintiff's complaint). Robert Green is the warden at the Montgomery County Correctional Facility ("MCCF"). Shelford Gilliam is assistant warden at the facility. Sergeant Robert Andrews, Lieutenant Anthony Mudalue, and Joshua Pheabus are correctional officers at MCCF. Delphine Nicol is a nurse employed at MCCF. Am. Compl. 6–7. On January 13, 2016, the County Attorney for Montgomery County, Maryland accepted service on behalf of the Montgomery County Defendants. ECF No. 23. Donald Rhoades, M.D. is not an employee of Montgomery County, Maryland. *Id.*

2

other inmates. *Id*. at 7. On January 13, 2015, inmate Christopher Brown assaulted Enow. Compl. 2. Enow faults Officers Pheabus and Andrews for failing to stop the attack immediately. Second Am. Compl. 11, ¶ 23. He sustained permanent vision loss to one eye and injuries to his eye, nose, and face, and he now suffers from dizziness and migraines. *Id.* at 6, ¶ 9.

Enow claims that, "despite the severity of the plaintiff's injuries, and the excruciating pain plaintiff suffered as a result of these injuries, only 400 mg of Aspirin and hydrogen peroxide were administered," without "any additional pain killer." *Id*. at 9, ¶ 17. Additionally, Nicol "told a colleague that plaintiff was a 'crybaby.'" *Id*. at 9, ¶ 18. Enow alleges that Dr. Rhoades "exercised deliberate indifference to plaintiff's health following the attack by Christopher Brown . . . by failing to provide adequate medical care care to the plaintiff," and Defendants Rhoades and Nicol "intentionally did not administer stitches to [a] deep cut in plaintiff's mouth and refused to fulfill any of plaintiff's requests for follow-up care as recommended by Dr. Sandra Cremers." *Id.* at 12, ¶ 24.

Enow's medical records (copies of which he filed with his pleadings, his Opposition to Defendants' Motion to Dismiss, and his Motion for Summary Judgment) show that, twenty minutes after the January 13, 2015 incident, a nurse at the Montgomery County Department of Correction and Rehabilitation determined that sutures were not needed; Enow denied experiencing nausea, dizziness, or vomiting; and his neurological signs were within normal range. The nurse recommended that his vital signs be rechecked an hour later and that he see a physician the next morning. Med. Recs., ECF No. 1-2, at 23; Med. Recs., ECF No. 11-3, at 31; Pl.'s Opp'n Ex. 2, ECF No. 32-2; Pl.'s Mot. Sum. J. Ex. 1, at 12, ECF No. 31-5. Dr. Sandra Cremers, M.D., an ophthalmologist, saw Enow on January 15, 2015 for the injury to his eye. Med. Recs., ECF No. 11-3, at 32–36. She recommended a follow-up visit in two weeks. *Id.*

The medical records that Enow attached to his filings do not include a record from a follow-up visit. Enow transferred out of MCCF on March 4, 2015. The earliest request for follow-up care that he included with his medical records was from March 12, 2015, after he had left MCCF. *Id.* at 40. He received an eye exam on April 8, 2015. *Id.* at 39, 42.

Enow was charged with, but found not guilty of, several institutional rule violations stemming from the incident with Brown. Notice of Infraction, ECF No. 1-2, at 31; Inmate Adjustment Disposition, ECF No. 1-2, at 28. Four days later, he filed a grievance form, asking the Assistant Warden to file criminal charges against Brown. Jan. 19, 2015 Inmate Grievance Form, ECF No. 1-2, at 34. Notably, on the grievance form, he did not complain that Defendants failed to protect him or that he received inadequate medical care. *See id.* Thereafter, a criminal case was brought against Brown. Notification, ECF No. 1-2, at 33.

After Brown assaulted him, Enow "complain[ed] to . . . Officer John Doe of assaults and threats of extreme violence from Christopher Brown's gang members" who were trying to dissuade Enow from testifying against Brown for assaulting him. Second Am. Compl. 4. As best I can discern, although Enow does not state explicitly, he asked the unidentified officer at that time to transfer him to protective custody. *See id.* But, instead of placing him "in administrative custody pending approval into protective custody," the unidentified officer placed him in disciplinary segregation, where McNair Demonte, a "cellmate with affiliations in Christopher Brown's gang," was housed. *Id.* It appears (although Enow again fails to state explicitly) that he then asked Lieutenant Mudalue to transfer him or Demonte to a difference cell on the same housing unit. *See id.* at 11, ¶ 22. He claims that "defendant L[i]eutenant Mudalu[e] exercised deliberate indifference to the plaintiff's health, safety and security by refusing for no

reason to authorize a cell transfer of either plaintiff or cell inmate, McNair Demonte to available cell in housing unit N1-1 [disciplinary segregation]." *Id.*

After the unnamed officer placed Enow in disciplinary segregation and Lieutenant Mudalue refused to transfer his or Demonte's cell, Demonte attacked him and Enow sustained injuries. *Id*. at 4. Then, an unidentified "jail guard . . . deliberately denied plaintiff access to medical treatment after plaintiff complain[ed] of dizziness after assault by fellow inmate, McNair Demonte." *Id.* at 7–8, ¶ 13.

He claims that he complained to the unidentified officer of threats on February 2, 2015 and was transferred to disciplinary segregation that day, yet he claims that Demonte's assault occurred on January 29, 2015 or February 1, 2015. *Id.* at 4; Am. Compl. 8, ¶ 15; Pl.'s Opp'n 3, ECF No. 32. And, the exhibits Enow attached show that he already was housed on N1-1 (disciplinary segregation) when he was charged with, and found guilty of, additional infractions on February 1, 2015. Inmate Adjustment Disposition, ECF No. 11-3, at 30. Mindful that Enow is proceeding without counsel, I construe his pleadings to allege that Demonte assaulted him in disciplinary segregation after he was transferred there, rather than to protective custody as he requested, as no other reading makes sense. Although the exact dates are unclear, what is clear is that Enow felt threatened, he voiced his fears and asked to be moved for his own safety, and he was moved, but to a unit where he was assaulted for the second time in a month.

It also is evident that he filed a grievance on February 2, 2015 (after Demonte attacked him), claiming that he "was placed in a wrong pod on the 30th of January, 2015," asking "to be put into protective custody," and asserting that what he previously sought was a transfer to protective custody. Feb. 2, 2015 Inmate Grievance Form, ECF No. 11-3, at 35 ("I am grieving because I was placed in a wrong pod on the 30th of January, 2015 because I came here but for

reclassification. I would like to be put into protective custody. That is the reason I requested for re-classification."); *see* Second Am. Compl. 4. He did not mention Demonte's attack or that guards denied his access to medical treatment. After he filed that grievance, he was placed in protective custody. Am. Compl. 5.

Dissatisfied with his treatment, Enow filed this suit, seeking $500 million in damages and "an Order declaring that the Defendants have acted in violation of 42 U.S.C. Section 1983." Second Am. Compl. 14. The Montgomery County Defendants have moved to dismiss Enow's Complaint, ECF No. 29, and the parties fully briefed the motion, ECF Nos. 29-2, 32, 34, 34-1. Enow also filed a Motion for Summary Judgment, ECF No. 31, which the parties fully briefed, ECF Nos. 33, 33-1, 37, 38. Having reviewed the filings, including the supporting exhibits, I find that a hearing is unnecessary. *See* Loc. R. 105.6.

## **Standard of Review**

Defendants seek dismissal of this case and oppose Enow's Motion for Summary Judgment on several grounds including failure to exhaust administrative remedies and failure to state a claim under 42 U.S.C. § 1983. Enow's Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D.

Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  If an affirmative defense "clearly appears on the face of the complaint," however, the Court may rule on that defense when considering a motion to dismiss. *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)).

Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## **Discussion**

The Montgomery County Defendants assert that Enow's federal claims have not been properly presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. § 1997e.  The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Thus, the PLRA applies to Enow as a pretrial detainee. *See id.* The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and therefore, a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1856–57 (2016) (citing *Miller v. French,* 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")); *see Jones v. Bock*, 549 U.S. 199, 220 (2007). And, typically, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F. 3d 717, 725, 729 (4th Cir. 2008). Yet, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" 136 S. Ct. at 1855. The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell,* 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo,* 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross,* 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 735 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase v. Peay,* 286 F. Supp. 2d 523, 529–30 (D. Md. 2003). As a pretrial detainee, Enow is subject to the strict requirements of the exhaustion provisions. *See*

*Porter*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).

The Supreme Court has outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are: (1) when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so "opaque" as to be "practically speaking, incapable of use"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

Enow claims that Defendants failed to protect him in two instances: first, Officers Pheabus and Andrews failed to stop Brown's attack promptly, and second, Officer Mudalue failed to grant his transfer request to prevent Demonte's attack. And, he claims that Defendants provided inadequate medical care after Brown's attack and unidentified "guards" blocked his access to medical care after Demonte's attack. To show that he exhausted his administrative remedies with regard to these claims, Enow presents two grievances that he filed.

On January 19, 2015, he filed a grievance form, asking that charges be filed against Brown. Jan. 19, 2015 Inmate Grievance Form, ECF No. 1-2, at 34 ("Deputy Warden Shelford Gillia[m], please press criminal charges against Christopher Brown for assaulting me. Please see incident report No. 12522. As a result, I sustained multiple injuries on my face. Please contact the medical unit for photographs and medical examination reports. Currently, I am completely blind on my right eye due to the impact of the close[d] fist into my right eye and my face."). He received the relief he requested, as criminal charges were brought against Brown.

9

Significantly, on that form, he did not complain that Defendants failed to protect him or failed to provide adequate medical care. *See id.* He has not identified any other grievance form that he filed with regard to Defendants' deliberate indifference toward his health and safety during and after Brown's attack. Nor has he alleged that this remedy was unavailable to him after Brown's attack. Clearly, he cannot make such an allegation, as he did pursue his administrative remedies following Brown's attack; he simply raised a different grievance.

One purpose of the PLRA is to "allow[] a prison to address complaints about the program it administers before being subjected to suit," *Jones v. Bock*, 549 U.S. 199, 219 (2007). The January 19, 2015 grievance form did not alert the prison that Enow was dissatisfied with "the program it administers," in terms of safety and medical care, as opposed to upset with another inmate's actions. *See id.* Indeed, based on the grievance form and subsequent events, it would appear that the prison met Enow's needs—for Brown to be criminally charged. Consequently, administrative remedies were available to Enow, and he availed himself of them for another purpose following Brown's attack, but he nonetheless failed to exhausted them with regard to his deliberate indifference claims insofar as they are based on Defendants' actions with regard to Brown's attack. *See id.*; *Ross*, 136 S. Ct. at 1856–59.

Enow filed another grievance on February 2, 2015, asserting: "I am grieving because I was placed in a wrong pod on the 30th of January, 2015 because I came here but for reclassification. I would like to be put into protective custody. That is the reason I requested for re-classification." Feb. 2, 2015 Inmate Grievance Form, ECF No. 11-3, at 35. Thus, he filed a grievance in which he complained that his previous request to be reclassified was misconstrued and he did not receive the housing assignment he sought (protective custody). Although he alleges elsewhere in his pleadings that "the jail guards . . . purposefully and recklessly failed to

10

provide plaintiff with grievance form - DCA-512 at certain incidence [sic] to prevent plaintiff from documenting and notifying the jail administration on acts of misconduct committed by correctional staff on plaintiff," Second Am. Compl. 7–8, ¶ 13, it is clear that he had access to, and availed himself of, the grievance process after Defendants allegedly were deliberately indifferent to his safety and failed to place him in protective custody.

Yet, in his February 2, 2015 grievance, he simply asked to be placed in protective custody. He did not state who misconstrued his previous request or how he made that request. Nor did he complain of his lack of access to medical care following Demonte's attack. Even if such details were not necessary for the prison to address his complaint, more is needed for the prison to know that simply moving him to protective custody upon receipt of the grievance was not an adequate remedy for Enow's perceived wrongs. The grievance did not enable the prison to address Enow's pending claims before he filed this suit. *See Jones*, 549 U.S. at 219. It is immaterial whether, as he claims, he "never received [an] official disposition copy of the grievance form," Second Am. Compl. 4, because disposition of the February 2, 2015 grievance would not exhaust his remedies regarding his deliberate indifference claims. Therefore, Enow's failure to exhaust his administrative remedies on these issues bars his deliberate indifference claim with regard to Demonte's attack. *See Moore*, 517 F. 3d at 725; 42 U.S.C. § 1997e(a).[3]

## Conclusion

In a separate Order that follows, the Montgomery County Defendants' Motion to Dismiss, ECF No. 29, will be GRANTED as to all claims against them. The claims against Dr. Rhoades will be dismissed as well, on the same grounds. Plaintiff's Motion for Summary

---

[3] Because I dismiss Enow's federal claims as unexhausted, I need not address the other grounds for dismissal that Defendants raise, such as qualified immunity.

Judgment, ECF No. 31, will be DENIED as moot. This Court declines to exercise supplemental jurisdiction over Enow's claims under Maryland law. *See* 28 U.S.C. § 1367(c)(3).

<u>March 20, 2017</u>                                             <u>        /S/                          </u>
Date                                                                         Paul W. Grimm
                                                                             United States District Judge